## CITY OF HARLINGEN v. SCROGGINS.

### No. 9860.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 19, 1938.

Rehearing Denied Nov. 16, 1938.

A. J. Rabel, of San Antonio, and Carter & Stiernberg, of Harlingen, for appellee.

MURRAY, Justice.

For a full statement of this cause, see Tex.Civ.App., 101 S.W.2d 632, Tex.Sup., 112 S.W.2d 1035, and Tex.Sup., 114 S.W. 2d 853.

At a previous term this Court reversed the judgment of the trial court and remanded this cause for a new trial, upon

the theory that the trial court should have sustained a general demurrer to the petition. It was the opinion of this Court that the acts of the officers of the City of Harlingen, in connection with the operation of the Valley Mid-Winter Fair, were ultra vires, and that the City was not responsible therefor. See our opinion in 101 S.W.2d 632.

A writ of error was prosecuted to the Supreme Court of this State and in an opinion found in 112 S.W.2d 1035, that Court reversed our judgment and affirmed the judgment of the trial court.

However, on a motion for rehearing the Supreme Court set that judgment aside and remanded the cause to this Court for the purpose of having this Court pass upon assignments relating to, first, the excessiveness of the verdict; second, the admissibility of certain testimony; and, third, the sufficiency of the evidence to support the verdict; these assignments presenting questions within the jurisdiction of the Court of Civil Appeals. 114 S.W.2d 853.

We are of the opinion that the verdict was not excessive. Appellant, City of Harlingen, does not contend that the amount of the verdict awarded by the jury was influenced by passion or prejudice, or that it was other than the result of the calm and conscientious deliberation of the jury.

In Texas & P. Ry. Co. v. Matkin, Tex.Civ.App., 142 S.W. 604, affirmed 107 Tex. 125, 174 S.W. 1098, the court lays down this test: "The test as to whether the verdict for damages is excessive is whether it is the result of calm and conscientious deliberations by the jury, uninfluenced by passion or prejudice." To the same effect are the cases of Houston & T. C. Ry. Co. v. Batchler, 37 Tex.Civ.App. 116, 83 S.W. 902; Magnolia Coca Cola Bottling Co. v. Jordan, 124 Tex. 347, 78 S.W.2d 944, 97 A.L.R. 1513.

Furthermore, the evidence as a whole justifies the amount of the verdict as found by the jury.

Appellant complains of the admission in evidence of certain transactions which occurred in the Chamber of Commerce in the years 1930, 1931, 1932 and 1933, when the injury occurred in 1934. We are of the opinion that this evidence was admissible. These facts were specially plead and proved to show how the City had systematically operated the fair through the Chamber of Commerce and its Secretary. It would be inconsistent with the holding of the Supreme Court in this case to exclude this testimony.

The only assignment of appellant which in any way raises the question of the sufficiency of the evidence is assignment No. 15, which reads as follows: "The Court erred in overruling this defendant's Exception No. 7 as to the Court's main charge as to plaintiff failing to show his present condition was the result of the fall and failing to show that such a fall was the producing cause of the condition he testified to be in, no proper question or answer having been put to and received from the doctors as to such."

Exception No. 7 objected to the submission of Special Issue No. 2-C of the court's charge. This issue was one of six issues on proximate cause and the jury having found against appellant on five other issues of negligence and proximate cause, any error in submitting Issue No. 2-C could have been only harmless error. Furthermore, the evidence shows conclusively that the negligence of appellant was the proximate cause of the injuries complained of by appellee.

A number of witnesses testified that they saw the accident and saw the bleeding, mangled body of Scroggins immediately after the accident. Both relatives and doctors testified to his good condition before the accident and his injuries after the accident.

Dr. Letzerich, who examined Scroggins shortly after the accident, testified that his examination showed:

"Fairly free hemorrhage from left ear, also hemorrhage from post natal area into the throat. A hemorrhage at these points is usually caused by a fracture of the base of the brain. The pupils did not react to light; movement was rather sluggish when he would close his eyes and then open them. He was in a dazed condition and would rally from a semi-conscious condition and then drop back into it again. There was no fracture of the bones in the nose or in the cartilage portion of the nose."

"Question: 'Then the blood that was coming out would have to come from farther back?' Answer: 'Yes sir. There was a fracture of the shoulder joint from the rear, and apparent fracture of the collar bone, considerable pain in the chest, congestion of the left lung, which devel-

oped about the third day after he was dismissed from the hospital. * * * He suffered with vertigo for two weeks after his dismissal.'

"Question: 'The injuries that you examined, what would cause such an injury?' Answer: 'A very severe blow or fall.'"

There is much more testimony in the record but we feel it would serve no useful purpose to set it out here.

The Supreme Court having determined all issues favorably to appellee, except the three issues remanded to us for consideration, and this Court having determined that there is no reversible error with respect to the matters remanded to us, the judgment of the trial court will be affirmed.